**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 21-CV-22957-SCOLA/GOODMAN**

**(CASE NO. 19-CR-20146-SCOLA)**

MARY LOU BRYANT,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**REPORT AND RECOMMENDATIONS ON 28 U.S.C. § 2255 MOTION**

More than two years after her conviction for theft of government funds became final, Mary Lou Bryant ("Movant" or "Bryant") filed a motion to vacate, set aside, or correct her federal sentence under 28 U.S.C. § 2255. [ECF No. 1 ("§ 2255 Motion")].

United States District Judge Robert N. Scola, Jr. has referred this § 2255 Motion to the Undersigned for a Report and Recommendations. [ECF No. 3].

As explained below, the Undersigned **respectfully recommends** that the District Court **dismiss** Bryant's § 2255 Motion as time-barred and not issue a certificate of appealability.

## I.      Factual and Procedural Background

### A.      Underlying Criminal Proceedings

On March 18, 2019, Bryant was charged by Information with one count of theft of government funds in violation of 18 U.S.C. § 641. [Crim. ECF No. 1].[1] The Information included a forfeiture allegation pursuant to 18 U.S.C. § 981(a)(1)(C). *Id.* It stated that "[u]pon conviction of the violation of Title 18, United States Code, Section 641, alleged in this Information, the defendant shall forfeit to the United States all property, real or personal, which constitutes or is derived from proceeds traceable to the violation, pursuant to Title 18, United States Code, Section 981(a)(l)(C)." *Id.* at p. 2.

Bryant waived her right to be charged by indictment, [Crim. ECF No. 4], and entered into a written plea agreement containing the following factual proffer:

> 10. This Office and the defendant stipulate to and agree not to contest the following facts, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty in this case:
>
>> The Federal Employee Compensation Act (FECA) was a health care insurance program of the United States Department of Labor. FECA was a worker's compensation program that provided benefits to Federal employees that were injured on the job. In addition to providing injured Federal employees with disability payments to replace their lost income, the program also pays for the health care of those Federal Employees who were injured on the job. **The defendant was a FECA beneficiary by virtue of the fact that**

---

[1]      References to the criminal-case docket under criminal case number 19-cr-20146-RNS will be made as "[Crim. ECF No. __]."

in 2012 the defendant was an employee of the United States
Postal Service.

If this case had gone to trial, the government would have
proved that, **from in or around September 2012 through in
or around March of 2019 the defendant knowingly and
willfully stole, converted, purloined money of the United
States and a department or agency thereof, that is the United
States Department of Labor**.

In or around September of 2012, the defendant began
receiving disability benefits. Upon making this claim, **the
United States Postal service offered the defendant a number
of different jobs which would have involved less strenuous
physical labor. The defendant refused all of these offers and
said she could not walk, sit or stand for any length of time.
From in or around September of 2012 and continuing
through March 2019, the defendant received $278,077 in
benefits from the government**.

In or around January of 2018, the United States Postal
Inspection Service, Office of Inspector General (USPS-OIG)
launched an investigation into the defendant's claims because
she was suspected of malingering and not as physically
disabled as she claimed to be in her follow-up medical
evaluations. In order to determine if the defendant and other
postal employees were malingering, USPS-OIG set up a[n]
undercover travel marketing company that offered free trips
to people if they agreed to participate in market research
studies in which they would be asked about their experiences.
On March 6, 2018, USPS-OIG agents, working in an
undercover capacity, contacted the defendant and offered her
an opportunity to receive a free trip to Orlando and Walt
Disney World. The defendant accepted this offer and went to
Walt Disney World from April 9, 2018 through April 13, 2018.
During the next few days **agents from USPS-OIG surveilled
the defendant and video recorded her engaged in many
activities that she claimed that she was unable to perform**.
For example, **the agents observed her standing in line for a
ride for up to 45 minutes**. On April 26, 2018, USPS-OIG

agents offered the defendant a second trip to Key West Florida and again the defendant accepted. On June 11, 2018[,] the defendant traveled to Key West and was again surveilled by agents and recorded. On this trip, **the defendant went on a lengthy walking tour of Key West and walked all over the city without assistance. The following day the defendant went on a bicycle tour of Key West and was able to ride a bicycle for more than one hour**.

On August 2, 2018, USPS-OIG agents, acting in an undercover capacity, interviewed the defendant and told her it was an interview whose purpose was to determine her continuing eligibility for worker's compensation benefits. **During this interview the defendant again claimed that she had trouble walking, sitting or standing**. **She was asked if she traveled and she did not tell the interviewer that . . . she had recently been to Key West**.

Lastly the government would have proved that the defendant was a resident of Miami-Dade County when she was on disability and receiving these payments.

[Crim. ECF No. 11, ¶ 10 (emphasis added)].

The plea agreement also included a forfeiture provision:

12.     **The defendant agrees to entry of a money judgment against her in an amount $278,077, which constitutes gross proceeds traceable to the commission of the offense and is therefore subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7)**. The defendant agrees to assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of any of her property, real or personal, to satisfy the money judgment. **The defendant also agrees to assist the United States in all proceedings involving the forfeiture of her rights, title, and interest, in any <u>substitute property</u> that may be used to satisfy the forfeiture money judgment**. Such assistance requires the following, among other things:

(a) The defendant shall complete a Financial Statement, which shall be provided by the United States herewith, within thirty

days of the Court's acceptance of the defendant's guilty plea;

(b) **The defendant shall agree to the entry of an order enjoining the transfer or encumbrance of assets that may be identified as being subject to forfeiture as a <u>substitute property</u>**; and;

(c) **The defendant shall assist in the transfer of such <u>substitute property</u>** by delivery to the United States, upon the United States' request, of all necessary and appropriate documentation with respect to such property, including consents to forfeiture, quit claim deeds, and any and all other documents necessary to deliver good and marketable title to such property.

The defendant knowingly and voluntarily agrees to waive any claim or defense the defendant may have under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to the forfeited assets. The defendant agrees to waive any applicable time limits for the initiation of administrative forfeiture or further notification of any judicial or administrative forfeiture proceedings brought against said assets. The defendant agrees to waive any appeal regarding forfeiture.

*Id.* at ¶ 12 (emphasis added).

On April 22, 2019, Bryant pled guilty to the Information. [Crim. ECF Nos. 12; 72].

During the plea colloquy, Bryant acknowledged, **under oath**, that she had carefully read

the plea agreement and that her signature was on the last page of the agreement. [Crim.

ECF No. 72, p. 4]. Bryant affirmed that she understood and agreed with the terms,

conditions, and facts set forth in the plea agreement. *Id.* at 4-5. She denied that there was

anything in the plea agreement she did not agree with or understand. *Id.* The Court asked

Bryant whether she had spoken to her attorney about the Information, the government's

evidence against her, the possible defenses to the charge, the plea agreement, and the decision to plead guilty or proceed to trial. *Id.* at 5. Bryant told the Court that she had. *Id.*

When asked by Judge Scola whether she was "fully satisfied with the representation and advice that ha[d] been provided to [her] by [her] attorney," Bryant responded, "[y]es, sir." *Id.* She did not report any concerns about her counsel's representation or advice when prompted by the Court. *Id.*

The Court asked Bryant about the facts set forth in the written plea agreement:

[THE COURT:] Do you understand those are the facts that the government would prove at a trial?

THE DEFENDANT: Yes, sir.

THE COURT: Did you, in fact, do all that?

THE DEFENDANT: Yes, sir.

*Id.* at 10.

The Court discussed the terms of the plea agreement with Bryant, including the agreed-upon amount of restitution ($278,077.00) and the forfeiture of any substitute property:

THE COURT: All right. Also as part of the plea agreement, an agreement that would you agree to the entry of a money judgment against you in the amount of $278,077, which are funds traceable to the commission of the offense and therefore forfeited to the United States, and you're agreeing to assist the United States in any forfeiture proceedings.

You're agreeing to complete and full financial statement, agreeing to the entry of an order prohibiting the transfer or encumbrance of any assets that are the subject of the forfeiture.

> **And you're agreeing to assist in the transfer of any <u>substitute property</u> by signing any documents to help the government attain ownership of that** and relating to the forfeiture agreeing to waive or give up any claim or defense you may have under the 8th Amendment to the United States Constitution, including a claim that the forfeiture constitutes an excessive fine or penalty.
>
> You're agreeing to waive or give up any applicable time limits for the initiation of forfeiture proceedings.
>
> You're agreeing to waive any further notification of any forfeiture proceedings, and you're agreeing to waive any appeal regarding the forfeiture. Do you understand all that?
>
> THE DEFENDANT: **Yes, sir.**

*Id.* at 10-11 (emphasis added). Bryant denied that any promises were made to her other than what was written in her plea agreement or that she was forced, threatened, or coerced into entering a guilty plea. *Id.* at 12.

At the conclusion of the plea colloquy, Bryant pleaded guilty and the Court made the following finding:

> I find that the defendant is fully competent and capable of entering an informed plea; that she's aware of the nature of the charge and the consequences of the plea. I find the plea is freely, knowingly, and voluntarily entered. I further find that her partial waiver of appeal is freely, knowingly, and voluntarily entered. I find that the plea is supported by an independent basis in fact, which contains each of the essential elements of the one offense to which she's pleading guilty, as is more fully set forth in the factual proffer that is contained within the plea agreement.
>
> Therefore, I'm going to accept her plea of guilty, adjudicate her guilty, order a presentence investigation report, and also set sentencing . . . .

*Id.* at 14.

On July 1, 2019, the government moved for the entry of an order of forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). [Crim. ECF No. 26]. On July 3, 2019, the Court entered an Order of Forfeiture against Bryant "in the amount of $278,077.00, which represent[ed] the gross proceeds traceable to the commission of the violation to which she pled guilty." [Crim. ECF No. 27, p. 2]. The Order of Forfeiture further provided that "the United States may, at any time, move pursuant to Federal Rule 32.2(e) to amend this Order **so as to substitute property** having a value not to exceed the sum of $278,077.00 in United States currency in satisfaction of the order of forfeiture in whole or in part." *Id.* at 3 (emphasis added).

On July 18, 2019 (the day of the sentencing hearing), the government filed a notice of *lis pendens* on Bryant's home and a motion for order of forfeiture of substitute assets. [Crim. ECF Nos. 30; 31]. In its motion, the government sought to amend the Order of Forfeiture to include Bryant's home as a substitute asset. [Crim ECF No. 30, p. 2].

The government's motion was supported by the declaration of a Special Agent with the United States Postal Service Office of the Inspector General who attested that:

> 6. After investigating Defendant's assets, it [was] [the Special Agent's] conclusion that traceable assets once owned or controlled by [Bryant] [could not] be located upon the exercise of due diligence; ha[d] been transferred or sold to, or deposited with, a third party; ha[d] been placed beyond the jurisdiction of the Court; ha[d] been substantially diminished in value; or ha[d] been commingled with other property which [could not] be divided without difficulty.
>
> 7. Further, [Bryant] ha[d] not disclosed the location of forfeitable property sufficient to satisfy the judgment sought in the United States Motion for

8

Order of Forfeiture.

[Crim. ECF No. 30-1, ¶¶ 6-7].

Later that morning, the Court held a sentencing hearing. [Crim. ECF Nos. 32; 61]. At the sentencing hearing, the Court heard from three witnesses who testified on behalf of Bryant. [Crim. ECF No. 61, pp. 12-18]. The Court also heard from Bryant. *Id.* at 18-21. The Court sentenced Bryant to one (1) month in prison, followed by a term of three years' supervised release, a $100.00 assessment, and $278,077.00 in restitution. *Id.* at 28.

At the conclusion of the sentencing hearing, the Court addressed the government's then pending motion for order of forfeiture of substitute assets:

> THE COURT: . . . . So there has already been a preliminary order of forfeiture, which is docket entry No. 27, so I am going to order the defendant's right, title, and interest in the property identified in that order to be forfeited. And that order will be incorporated by reference into the final judgment.
>
> [AUSA]: Your Honor, if I may, docket entry No. 27 was a forfeiture judgment in the amount of $278,077. **The motion that the government filed this morning was a motion for forfeiture of substitute assets to satisfy that judgment, and it is for the real property located at 16131 Northwest 18th Avenue.** This would be under 21 U.S.C. [§] 853(p), and it's accompanied by a declaration that the United States was not able to trace the exact property from this crime and that the requirements of 853(p) have, therefore, been satisfied.
>
> THE COURT: Who is the owner of that property?
>
> [AUSA]: The defendant.
>
> THE COURT: Just her?
>
> [AUSA]: Yes, Your Honor.

THE COURT: **What is the defense position on that motion?**

[BRYANT'S TRIAL COUNSEL]: Just a second, Your Honor. **The only thing, Judge, I would object as relates to that based upon the fact that is the property that, although it is in my client's name, her and her husband reside there. That's their domicile.**

THE COURT: **I don't know that that is a legally recognized objection though. So I am going to enter the order of forfeiture of substitute assets.** Now that sentence has been imposed, does the defendant or her counsel object to the Court's finding of fact, the manner in which sentence was pronounced, or any of the Court's sentencing rulings?

[BRYANT'S TRIAL COUNSEL]: No, Judge.

*Id.* at pp. 28-29 (emphasis added).

On July 19, 2019, the Court entered its Order of Forfeiture of Substitute Assets permitting the government to seize Bryant's home to satisfy the $278,077.00 money judgment [Crim. ECF No. 33].

The Court entered a judgment against Bryant on July 22, 2019. [Crim. ECF No. 34]. Bryant did not file a notice of appeal.

On August 26, 2019, Bryant filed a *pro se*[2] motion for reconsideration of the Court's Order of Forfeiture of Substitute Assets. [Crim. ECF Nos. 33; 35]. Bryant argued that her home was not subject to forfeiture because the government had not met "its burden of

---

[2]     Bryant filed this motion *pro se* even though she was still represented by trial counsel. Bryant's trial counsel did not move to withdraw (and the Court did not grant trial counsel leave to withdraw) until October and November 2020, more than a year after Bryant filed her August 26, 2019 *pro se* motion.

demonstrating that [Bryant] [had] used any portion of the questioned government benefits to pay for the property it [sought] to forfeit as being traceable to the commission of the offense." [Crim ECF No. 35, p. 8 (internal quotation marks omitted)].[3]

Bryant further argued that the amount of restitution in the case was not $278,077.00, but was, at most, $7,296.00 because, "according to the case number, [the crime] accrued at the very earliest of January 1, 2019 and ended at its latest on February 28, 2019." *Id.* at 10. Thus, per Bryant, the amount of restitution was limited to the government benefits Bryant received during that two-month period. *Id.*

The relief sought by the motion for reconsideration was the vacatur of the Order of Forfeiture. *Id.* It did not seek to relieve Bryant of her one-month prison sentence (which at the time, Bryant had not yet begun to serve) or seek to withdraw her guilty plea based on her trial counsel's purported misadvice (or for any other reason).

The government filed a response in opposition, noting that Bryant had pleaded guilty to the Information and, pursuant to a written plea agreement, had agreed to the forfeiture of $278,077.00. [Crim. ECF No. 38]. The government also noted that it did not have to prove Bryant's home was traceable to the crime because it had asked the Court to deem the property forfeitable as a substitute asset. *Id.*

---

[3] In the motion for reconsideration, Bryant also asserted that she and her "[then trial] counsel [had] agreed that an appeal was needed" but trial counsel failed to file a notice of appeal or otherwise preserve Bryant's appellate rights. [Crim. ECF No. 35, p. 3 (emphasis omitted)]. Bryant has not asserted a claim of ineffective assistance of counsel based on her former trial counsel's failure to file a notice of appeal.

On September 16, 2019, Bryant filed Defendant's Reply to Government's Opposition to Defendant's Motion for Reconsideration [Crim. ECF No. 40 ("Reply")][4] -- the document which Bryant (now represented by new counsel) contends should be construed as a § 2255 motion.

The Reply [Crim. ECF No. 40] was filed *pro se* while Bryant was serving her one-month prison sentence. Despite being in custody, Bryant did not ask the Court to release her from the remainder of her sentence or to vacate her guilty plea in the Reply [Crim. ECF No. 40]. Instead, the arguments raised in the Reply [Crim. ECF No. 40] mirrored the arguments raised in Bryant's motion for reconsideration [Crim. ECF No. 35] and directly addressed the government's response in opposition. [Crim. ECF No. 38]. In fact, Bryant cited to the government's response throughout her Reply. *Id.* at 1-2, 5-7, 9.

As with the motion for reconsideration, the relief sought in the Reply [Crim. ECF No. 40] was the vacatur of "the previous Order of Forfeiture of [Substitute] Property, i.e., Defendant's Homestead Property." *Id.* at 11.

On October 16, 2020, Bryant filed a *pro se* motion, seeking vacatur of the order of forfeiture of substitute assets and leave to file a notice of appeal. [Crim. ECF No. 45]. Bryant argued that she had been deprived of her right to appeal because the Court did not provide her with a copy of the order denying Bryant's motion for reconsideration. *Id.*

---

[4]     The Reply [Crim. ECF No. 40] was filed *after* the Court had denied by paperless order Bryant's motion for reconsideration. [Crim. ECF No. 39]. It does not appear that Bryant was aware of the Court's ruling at the time she filed her Reply [Crim. ECF No. 40].

at 4. Bryant did not seek to vacate her guilty plea based on the affirmative misadvice of her trial counsel (or for any other reason).

On November 16, 2020, the Court denied in part the portion of the motion that sought to vacate the order of forfeiture of substitute assets and reserved ruling on the portion of the motion which sought to file a notice of appeal. [Crim. ECF No. 63].

The Court appointed CJA counsel (the attorney who is representing Bryant in the instant 2255 proceedings):

> for the sole purpose of discussing with [Bryant] and advising her on whether to pursue her request to appeal or to ask the Court to allow her to file a timely notice of appeal because there may be, even if she wants to pursue an appeal, even if it's too late because of the appeal waiver, she still has a right to file an appeal[.]

*Id.* The Court also granted Bryant's trial counsel's motions to withdraw. *Id.*

On June 30, 2021, Bryant's CJA counsel advised the Court that the parties' efforts to reach a resolution concerning Bryant's home[5] were unsuccessful and that Bryant wished to pursue an appeal. [Crim. ECF No. 67].

Following a status conference on September 16, 2021, the Court appointed Bryant's CJA counsel to represent Bryant "for all post[-]conviction matters in this case including

---

[5] The unopposed motion to modify Bryant's supervised release indicates that "Bryant [was] attempting to negotiate an agreement with the Government to permit her to pay a lump sum to the United States to avoid the foreclosure of the Government's lien upon her home." [Crim. ECF No. 65, p. 1].

the 2255 motion." [Crim. ECF No. 69]. The Court further directed that "[i]f [Bryant] [was] going to file an amended motion, it [would] be due on 8/16/2021." *Id.*

On August 15, 2021, Bryant filed the instant § 2255 Motion. [Crim. ECF No. 73]. The Court has indicated that it "will hold the issue of forfeiture in abeyance[.]" [Crim. ECF No. 75].

## II.      The Instant § 2255 Proceedings

Bryant filed the instant § 2255 Motion, through her CJA counsel, on August 15, 2021. [ECF No. 1]. In the Motion, Bryant alleged that:

> Prior to entering into the plea agreement before the Court, Mrs. Bryant asked [her then-trial counsel] whether her house could be forfeited as part of the plea agreement, judgment or sentence. **[Trial counsel] assured Mrs. Bryant, more than once, that her home would not be at risk. [Trial counsel] advised Mrs. Bryant that she did not have to worry about that occurring and that it would not. Had she known that there was a possibility that her home, which had nothing to do with the crime she was convicted of, could be forfeited, Mrs. Bryant never would have agreed to enter into a plea agreement with the United States**. At no time did Mrs. Bryant understand that a "substitute asset", as described in her plea agreement meant her home, and **had she understood that it could have meant her home, she would never have accepted the plea agreement**.

*Id.* at 4 (emphasis added).

Bryant signed the § 2255 Motion under penalty of perjury. *Id.* at 13. The motion was not accompanied by an affidavit or declaration from her former trial counsel, confirming that he told Bryant that her house would not be forfeited as a substitute asset.

At the Undersigned's direction, Bryant filed a memorandum of law [ECF No. 8]. The government filed a response in opposition [ECF No. 12] and Bryant filed an optional

reply [ECF No. 13]. This matter is ripe for adjudication.

### III.     Legal Standards

#### A.     AEDPA

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year limitations period for filing § 2255 motions. 28 U.S.C. § 2255(f). "Congress adopted this 'tight time line' to further AEDPA's fundamental purpose: 'to advance the finality of criminal convictions.'" *Chin v. United States*, 853 F. App'x 640, 643–44 (11th Cir. 2021) (quoting *Mayle v. Felix*, 545 U.S. 644, 662 (2005)).

The limitations period begins to run from the *latest* of four events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Here, the only relevant event is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).[6]

---

[6]     Movant does not argue, nor does the record support a finding, that any of the events identified in §§ 2255(f)(2)-(4) occurred here.

### B.       Federal Rule of Civil Procedure 15

"Rule 15 of the Federal Rules of Civil Procedure applies to civil actions brought under 28 U.S.C. § 2255." *Davenport v. United States*, 217 F.3d 1341, 1343 n.4 (11th Cir. 2000). Federal Rule of Civil Procedure 15(c) permits a movant to amend his or her pleading after the limitations period has run provided that the amended motion "relates back" to the original pleading. Fed. R. Civ. P. 15(c); *Mayle*, 545 U.S. at 655.

Rule 15(c) states that: "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c). "The 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding." *Mayle*, 545 U.S. at 655.

"Although the Court should freely allow amendments 'when justice so requires,' the reach of Rule 15 is limited in a habeas proceeding when an amendment would be inconsistent with an applicable federal statutory provision." *Arnold v. Estets*, No. 2:12-CV-2398-KOB-MHH, 2013 WL 5524784, at *1 (N.D. Ala. Sept. 30, 2013) (quoting Fed. R. Civ. P. 15(a)(2)). "Congress intended Rule 15(c) to be used for a relatively narrow purpose; it did not intent for the rule to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003).

The Eleventh Circuit has observed that "[t]his 'relatively narrow purpose' of Rule 15(c) can be thwarted in the post-conviction context: 'the effective date of the claims made in amendments to habeas corpus petitions [would be] irrelevant, because if the claim could not be added by amendment, it could be asserted by subsequent petition that would not be barred by any limitations period.'" *Jones v. United States*, 304 F.3d 1035, 1043 (11th Cir. 2002) (quoting *Pruitt v. United States*, 274 F.3d 1315, 1318 (11th Cir. 2001)).

"In the habeas context, it is not enough for the later pleading to concern the same legal proceeding as the original motion." *Wilcher v. United States*, 808 F. App'x 938, 940–41 (11th Cir. 2020) (citing *Mayle*, 545 U.S. at 662–64). "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Mayle*, 545 U.S. at 662. "Rather, to relate back, the original and amended pleadings must 'state claims that are tied to a common core of operative facts.'" *Id.* (quoting *Mayle*, 545 U.S. at 664).

### C.    Equitable Tolling and Actual Innocence

"[E]quitable tolling and actual innocence provide limited exceptions to the [AEDPA's] one-year limitations period." *United States v. Damayo*, No. 1:10-CR-190-1-0DE, 2015 WL 4092456, at *3, n.3 (N.D. Ga. July 6, 2015).

The Eleventh Circuit has explained that:

In the § 2255 context, equitable tolling "is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond

his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam); *see Calderon v. United States Dist. Court*, 128 F.3d 1283, 1288 (9th Cir. 1997) ("Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."). "The 'extraordinary circumstances' standard applied in this circuit focuses on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying conviction." *Helton* [*v. Sec'y for Dep't of Corr.*], 259 F.3d [1310,] 1314–15 [(11th Cir. 2001)]. The petitioner has the burden of proving entitlement to equitable tolling by showing that "extraordinary circumstances that were both beyond his control and unavoidable even with diligence" prevented filing the petition on time.

*Jones v. United States*, 304 F.3d 1035, 1039–40 (11th Cir. 2002). "Because equitable tolling is an extraordinary remedy, it is limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (citation and internal quotation marks omitted).

A claim of actual innocence will also permit the Court to review a petition that is otherwise time-barred. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."). In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

"To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021) (alteration in original)

(quoting *Bousley*, 523 U.S. at 623).

## IV.    Analysis

In the underlying criminal case, the Court entered a judgment against Bryant on July 22, 2019. [Crim. ECF No. 34].[7] Bryant did not file a notice of appeal and her conviction became final fourteen days later, on August 5, 2019.[8] Thus, Bryant had one year from August 5, 2019, or until August 5, 2020,[9] to file a § 2255 motion.

---

[7]    Although Bryant's judgment is dated July 18, 2019, it was not *entered* on the docket until July 22, 2019. "The judgment is 'entered' when it is entered on the docket by the Clerk of Court. *St. Louis v. United States*, No. 17-CR-20116, 2019 WL 9096340, at *6, n.1 (S.D. Fla. Apr. 23, 2019) (citing Fed. R. App. P. 4(b)(6)), report and recommendation adopted, No. 17-CV-20116, 2019 WL 9096339 (S.D. Fla. May 24, 2019).

[8]    "[W]hen a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires." *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011); *see Borgesano v. United States*, No. 20-11453, 2021 WL 2879696, at *2 (11th Cir. July 9, 2021) ("[W]hen, as in this case, a criminal defendant does not pursue a direct appeal, his judgment of conviction becomes final when the time for filing a notice of appeal expires.").

Federal Rule of Appellate Procedure 4 states that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." Fed. R. App. P. 4(b)(1)(A). Here, the government did not file a notice of appeal. Thus, the deadline for Bryant to file a notice of appeal was August 5, 2019, fourteen days after July 22, 2019, the date the judgment was docketed on CM/ECF.

[9]    The year 2020 was a leap year. "Typically, the limitations period should be calculated according to the 'anniversary method,' meaning that the limitations period expires on the anniversary date of when it began to run." *Dukes v. Sec'y, Fla. Dep't of Corr.*, No. 21-13203-C, 2022 WL 832280, at *2 (11th Cir. Feb. 9, 2022) (citing *Downs v. McNeil*, 520 F.3d 1311, 1317–18 (11th Cir. 2008)). "The anniversary date will be the last day to file even

The instant § 2255 Motion -- filed on August 15, 2021 -- falls outside the AEDPA's one-year limitations period. Nonetheless, Movant contends that the Court should consider the merits of the instant Motion because it relates back to a prior filing -- Bryant's *pro se* Reply [Crim. ECF No. 40], filed on September 16, 2019 -- and is therefore timely.

Movant thus asks this Court to: (1) liberally construe her *pro se* Reply [Crim. ECF No. 40] as a § 2255 motion and (2) find that the instant § 2255 Motion relates back to her Reply [Crim. ECF No. 40]. *See* [ECF No. 8, p. 4("Mrs. Bryant's September 16, 2019 pleading ([Crim. ECF] No. 40), although captioned 'Reply' should be construed as a § 2255 petition, as amended by this Petition.")]. For the reasons discussed below, the instant § 2255 Motion is time-barred.

### A.   Applying a Liberal Construction, Bryant's Reply [Crim. ECF No. 40] Should Not be Construed as a § 2255 Motion

The Reply [Crim. ECF No. 40] was filed by Movant *pro se*. "*Pro se* filings . . . are entitled to liberal construction." *Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

"Federal courts have long recognized that they have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in

---

when the intervening period includes the extra leap year day." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

effect, cognizable under a different remedial statutory framework. *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990) (citing *Andrews v. United States*, 373 U.S. 334 (1963)); *Brown v. Synovus Fin. Corp.*, 783 F. App'x 923, 931 (11th Cir. 2019) ("A *pro se* party's characterization of his motion is not controlling; the court must determine under which remedial framework to construe the motion.").

At the same time, "even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Here, Bryant (now represented by counsel) is asking the Court to construe her *pro se* Reply [Crim. ECF No. 40] as a § 2255 motion. *See* [ECF No. 8, p. 4 ("[A]lthough Mrs. Bryant's 'Reply' wasn't formally labeled as a § 2255 petition, the relief it sought and harms it complained of clearly are in line with that provision of the law.")].

The relief sought by the Reply [Crim. ECF No. 40] was the vacatur of the Court's order of forfeiture of substitute assets and the harm complained of was the inclusion of Bryant's home as a substitute asset. Bryant also challenged the *amount* subject to forfeiture (arguing that, at most, the restitution amount should be $7,296.00, not $278,077.00). Importantly, Bryant did not seek relief from her 30-day prison sentence (which, at the time of the Reply, she had begun serving) or seek to vacate her guilty plea (based on the

affirmative misadvice of trial counsel or otherwise). It is clear from her Reply [Crim. ECF No. 40] (and the corresponding motion for reconsideration [Crim. ECF No. 36]), that Bryant was concerned with the forfeiture of her home and the amount subject to forfeiture.

"The essential purpose of the writ of habeas corpus is to free individuals from wrongful restraints upon their liberty." *Grover v. U.S. Bureau of Prisons*, 182 F.3d 917 (6th Cir. 1999) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Peyton v. Rowe*, 391 U.S. 54, 66 (1968)). "The plain language of the statute indicates § 2255 applies to 'a prisoner in custody . . . **claiming the right to be released**.'" *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009) (emphasis added) (quoting 28 U.S.C. § 2255). The relief sought by Bryant's Reply [Crim. ECF No. 40] -- the vacatur of an order of forfeiture of substitute assets (and/or a reduction in the forfeiture amount) -- is not cognizable under § 2255.

In *Green v. United States*, for instance, the petitioner argued that his "counsel was ineffective for failing to clarify the record as to whether the government would be able to force the sale of petitioner's home when only $347,423.50 was subject to forfeiture." No. 2:12-CR-5-FTM-29CM, 2017 WL 3327588, at *2 (M.D. Fla. Aug. 2, 2017). The court determined that the "petitioner's claim [was] simply not cognizable by habeas corpus" noting that "[b]ecause a successful challenge to the Final Order of Forfeiture would in no part relieve petitioner from his physical confinement, § 2255 [was] not the proper vehicle to seek non-custodial relief that is otherwise barred." *Id.* (citing *Arnaiz v. Warden, Fed.*

*Satellite Low*, 594 F.3d 1326, 1329 (11th Cir. 2010); *United States v. Harris*, 546 F. App'x. 898, 901 (11th Cir. 2013)); *see also Tarabein v. United States*, No. CR 17-00090-KD-B, 2021 WL 5167294, at *7 (S.D. Ala. Nov. 5, 2021) ("Because [movant's] claim that his attorneys were ineffective for failing to challenge the forfeiture of his properties does not seek relief from a custodial sentence, it is not cognizable under § 2255.").

Similarly here, Bryant's Reply [Crim. ECF No. 40] did not seek to release Bryant from the remainder of her one-month prison sentence. The Reply [Crim. ECF No. 40] challenged the forfeiture of Bryant's home as a substitute asset. Bryant also challenged the restitution amount ($278,077.00 versus $7,296.00). *Id.* "[Section] 2255 cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those prisoners who 'claim[ ] the right to be released' from custody." *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998).

In sum, Bryant's Reply [Crim. ECF No. 40] challenged the Court's order forfeiting her home as a substitute asset and the amount subject to forfeiture. It did not, in any way, seek Bryant's immediate release from custody, did not challenge the length of Bryant's sentence, or the legality of her confinement. The Reply [Crim. ECF No. 40] was therefore not a § 2255 motion and cannot be liberally construed as one.

**B.      The Instant § 2255 Motion Does Not Relate Back to Bryant's Reply [Crim. ECF No. 40]**

The instant § 2255 Motion -- filed more than two years after Movant's conviction became final -- falls outside the AEDPA's one-year limitations period. Nonetheless, the

Court may still consider the merits of Bryant's untimely claim of ineffective assistance of counsel, *if* the Court finds, pursuant to Federal Rule of Civil Procedure 15(c), that the claim "relates back" to a claim asserted in a timely filed habeas motion. *See Mouzon v. United States*, No. 21-10603-E, 2021 WL 3772015, at *1 (11th Cir. Aug. 3, 2021) ("An untimely § 2255 claim . . . can be considered if it 'relates back' to timely filed § 2255 claims.") (citing Fed. R. Civ. P. 15(c); *Mayle*, 545 U.S. at 649-50)).

The Undersigned has already determined that the Reply [Crim. ECF No. 40] cannot be liberally construed as a § 2255 motion, even under the relaxed pleading standard afforded to *pro se* litigants, and Bryant (now represented by counsel) has not identified any *other* filings which could possibly be construed as a habeas motion. Thus, in the instant case, there is *no* timely-filed pleading for Bryant's § 2255 Motion to *relate to* under Fed. R. Civ. P. 15(c).

Additionally, even if the Court were to construe Bryant's Reply [Crim. ECF No. 40] as a § 2255 motion (which it is not), the instant § 2255 Motion does not relate back to that document.

The instant Motion asserts a claim of ineffective assistance of counsel based on trial counsel's alleged affirmative misadvice that if Movant pleaded guilty, her home would not be forfeited as a substitute asset. [ECF No. 1, p. 4]. The Reply [Crim. ECF No. 40], on the other hand, argued that Bryant's home could not be used as a substitute asset because the government had failed to show that Bryant used her government benefits to pay for

her home and that the amount of forfeiture was actually $7,296.00 (not $278,077.00) because, according to Movant, she was charged with an offense beginning in January 2019 and ending in February 2019.

While both claims, in a *general* sense, stem from Movant's dissatisfaction with the use of her home as a substitute asset, the Reply [Crim. ECF No. 40] does not mention Movant's trial counsel or his alleged affirmative misadvice about the consequences of pleading guilty. In fact, there is nothing in the Reply [Crim. ECF No. 40] which suggests that Bryant wanted to undo her guilty plea. Rather, the relief sought in the Reply [Crim. ECF No. 40] was the vacatur of the order of forfeiture of substitute assets and the reduction of the amount subject to forfeiture. And the reason for the requested vacatur had nothing to do with allegedly ineffective advice from her attorney about her home somehow being off limits from a substitute assets forfeiture Order.

Bryant relies on *Dean v. United States* to support her argument that the instant § 2255 Motion relates back to her Reply [Crim. ECF No. 40]. 278 F.3d 1218 (11th Cir. 2002) (per curiam). In *Dean*, the Eleventh Circuit determined that three out of four claims related back to the petitioner's initial, timely-filed *pro se* habeas petition. *Id.* at 1222-23.

The Eleventh Circuit determined that the first amended claim -- that the government knowingly presented the perjured testimony of three witnesses -- related back to the original claim that the petitioner had been convicted through the use of perjured testimony. *Id.* at 1222. In doing so, the appellate court noted that the amended

25

claim "serve[d] to add facts and specificity to the original claim; it specifie[d] the exact witnesses that [the petitioner] allege[d] presented perjured testimony." *Id.*

The fifth claim -- "that the court failed to make individual findings as to the amount of crack cocaine" -- related back to a claim of "incorrect use" of U.S.S.G. §§ 1B1 and 3B1. The Eleventh Circuit reasoned that the fifth claim was "a more carefully drafted version of the original claim, thus making the reference to § 1B1 in [the petitioner's] original petition sufficient to put the government on notice of the nature of his claim, regardless of his failure to state the specific subsection." *Id.* at 1223.

The sixth claim -- "that the district court erred in allowing evidence of uncharged misconduct" -- related back to the original claim that the trial court allowed the government to introduce inadmissible evidence because it "arose out of the same conduct or occurrence set forth in the original pleading, i.e., the district court's allowing the government to enter allegedly inadmissible evidence of uncharged misconduct at trial." *Id.* at 1223. The Eleventh Circuit noted that "[t]he original claim gave notice that [the petitioner] believed that there was inadmissible evidence used against him at trial" and "[t]he amended claim serve[d] to specify that the allegedly inadmissible evidence was that of uncharged misconduct." *Id.* at 1223.

The fourth claim -- the miscalculation of petitioner's base offense level under U.S.S.G. § 2D1.1 --, however, did *not* relate back to the original petition because "[petitioner] did not make this claim at all in his original petition." *Id.* at 1222–23.

*Dean* does not help Bryant. *Dean* stated that "while Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Id.* at 1221. *Dean* also stated that "[t]he key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based." *Id.* at 1222.

Here, Bryant's former trial counsel's alleged affirmative misadvice -- that if Bryant pleaded guilty, her home would not be subject to forfeiture as a substitute asset -- is a *new* claim that differs from the arguments made in Bryant's Reply [Crim. ECF No. 40] -- i.e., that the government could not use Bryant's home as a substitute asset because the government had failed to show Bryant paid for her home using her government benefits and that the amount of the forfeiture was limited to, at most, the benefits Bryant received in January and February of 2019. Unlike the related-back claims in *Dean*, Bryant's claim of ineffective assistance of counsel does not add facts or specificity to the arguments she raised in her Reply [Crim. ECF No. 40], nor is it a more-carefully drafted version of those arguments.

The Eleventh Circuit has stated that the "critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Chin*, 853 F. App'x at 644 (quoting *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). Construed liberally, there is nothing in the Reply [Crim. ECF No. 40] which would have alerted the government that Bryant sought to raise a claim of ineffective assistance

of counsel or that she was dissatisfied with her trial counsel's advice at the plea stage (or at any other stage in the criminal proceedings).

In sum, Bryant's claim of ineffective assistance of counsel based on alleged affirmative misadvice at the plea stage does not relate back to her Reply [Crim. ECF No. 40] seeking to challenge the Court's order of forfeiture of substitute assets and the forfeiture amount.

## C.    Bryant is Not Entitled to Equitable Tolling

The limitations period set forth in § 2255(f) is subject to equitable tolling. *Jones*, 304 F.3d at 1039–40. Although not argued by Movant, the Undersigned finds that the instant case does not warrant equitable tolling. A movant is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).

Bryant has not identified (nor does the record reveal) any extraordinary circumstance which prevented her from filing a timely § 2255 motion. Moreover, Bryant cannot show diligence. Bryant knew, at the very latest, at her sentencing hearing that the government sought to forfeit her home as a substitute asset. Bryant even sought to vacate the Court's order of forfeiture of substitute assets by filing a motion for reconsideration. [Crim. ECF No. 35].

Based on this record, Movant is not entitled to equitable tolling.

28

### D.     Actual Innocence is Not Applicable

Here, Movant does not raise actual innocence as a means to overcome the untimeliness of her § 2255 Motion. Nonetheless, Movant would not be entitled to relief based on a claim of actual innocence even if she made this assertion. The factual proffer contained in the written plea agreement and the plea colloquy with the Court during her change of plea hearing demonstrate that Movant admitted to the facts underlying her conviction. Movant is not arguing that she did not engage in the conduct set forth in the plea agreement. Rather, Movant's argument is that she would not have pleaded guilty (and would have proceeded to trial) had counsel advised her that her home could be subject to forfeiture as a substitute asset.

Movant cannot rely on a claim of actual innocence to overcome the untimeliness of her Motion.

Without an applicable equitable exception, Bryant's § 2255 Motion is time-barred.

## V.     No Evidentiary Hearing is Warranted

Movant seeks an evidentiary hearing on the *merits* of her claim that her former trial counsel rendered ineffective assistance at the plea stage when he (allegedly) affirmatively misadvised Movant that her home would not be subject to forfeiture. However, the Court need not consider the merits of this claim because Movant's § 2255 Motion is untimely.

"A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir.

2014) (quotations omitted). On the other hand, "an evidentiary hearing is not necessary if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Stillwell v. United States*, 709 F. App'x 585, 588 (11th Cir. 2017) (quoting 28 U.S.C. § 2255(b)).

Here, there is no basis on the record to conclude that Movant would be able to develop facts at an evidentiary hearing sufficient to overcome § 2255(f)'s one-year limitations period. An evidentiary hearing is not warranted in this case.

## VI.    No Certificate of Appealability Should Issue

Bryant is not entitled to a certificate of appealability ("COA"). Rule 11(a) of the Rules Governing § 2255 Proceedings states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, then "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

"[W]hen the district court has rejected a claim on procedural grounds, the petitioner must show that 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Boykin v. United States*, No. 3:17-CR-35-MMH-LLL, 2022 WL 35931, at *8 (M.D. Fla. Jan. 4, 2022) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because the Undersigned recommends that Judge Scola find that the instant § 2255 Motion is time-barred and that

Bryant is not entitled to relief under Fed. R. Civ. P. 15(c) or any equitable exception, the Undersigned also recommends that Judge Scola find that Bryant is not entitled to a COA. *See United States v. Rhodes*, No. 8:13-CR-347-T-23TGW, 2016 WL 4702430, at *4 (M.D. Fla. Sept. 8, 2016) (denying COA, in part, because "the Section 2255 motion [was] clearly time-barred").

As provided by Rule 11(a), "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, then that party may bring this argument to the attention of Judge Scola in the objections permitted to this Report and Recommendations.

## VII.    Conclusion

The Undersigned **respectfully recommends** that the District Court (1) **dismiss** Bryant's § 2255 habeas motion as time-barred and (2) not issue a COA.

## VIII.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in

this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on April 11, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>**:
The Honorable Robert N. Scola, Jr.
All counsel of record